# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Brief, August 19, 2014

## GARY DWAYNE JOHNSON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2007-A-692     Monte Watkins, Judge**

---

**No. M2013-024034-CCA-R3-PC - Filed November 12, 2014**

---

The petitioner, Gary Dwayne Johnson, appeals the denial of his petition for post-conviction relief. He stands convicted of multiple charges based upon his actions following his escape from custody at a hospital where he was being treated. He was sentenced, as a career offender, to an effective term of one hundred and forty-one years in the Department of Correction. On appeal, he contends that the post-conviction court erred in its denial because he was denied his right to the effective assistance of counsel. Specifically, he contends that trial counsel was ineffective by: (1) failing to adequately investigate the case and potential exonerating evidence; (2) failing to pursue a motion for severance; (3) failing to include all issues in the motion for new trial; and (4) failing to file mitigating factors and provide adequate representation at the sentencing hearing. Following review of the record, we conclude that the post-conviction court properly denied relief. As such, the judgment of the court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN, J.,joined. JERRY L. SMITH, J., not participating.

Jamie Machaner, Nashville, Tennessee, for the appellant, Gary Dwayne Johnson.  .

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Roger Moore, Assistant District Attorney General, for the appellee, State of  Tennessee.

## OPINION

# Procedural History

A complete recitation of the facts supporting the petitioner's instant convictions can be found in this court's direct appeal opinion. *State v. Gary Dwayne Johnson*, No. M2009-00157-CCA-R3-CD, 2011 Tenn. Crim. App. LEXIS 162 (Tenn. Crim. App. Mar. 7, 2011). Here, we recite only a summation of those facts as is necessary for our review.

On October 4, 2006, the petitioner was in the custody of the Davidson County Sheriff's Office, but he was at Nashville General Hospital receiving medical treatment. *Id*. at *3. In the early evening hours, Sergeant Stacy Cummings unshackled the petitioner and allowed him to use the restroom. After returning from the restroom, the petitioner instigated an altercation with Sgt. Cummings in which the petitioner tried to gain possession of the officer's weapon. The petitioner eventually did gain control of the weapon, and it was discharged inside the hospital room. Sgt. Cummings stated that after the discharge, she felt the heat from the bullet as it passed her ear. She also suffered various injuries to her person from the petitioner's attack. Before running from the room, the petitioner told Sgt. Cummings, who had fallen to the floor, "Bitch, I'm not going back to jail." *Id*. at **3-4. These actions were observed by a nurse, who also witnessed the petitioner get on the elevator. *Id*. at *5.

Anita Cox had arrived at the hospital in order to make her daily pick up of blood and urine samples, which her employer, Quest Diagnostics, processed. The petitioner approached her and said, "Give me your keys." When Ms. Cox initially refused, the petitioner pointed a gun at her and again demanded the keys. She raised her hands in the air, and the petitioner removed the keys from her pocket and left. After her van was recovered, Ms. Cox became aware that her wallet had been rummaged through and that some change, her cigarettes, and her lighter were missing. *Id*. at **5-6.

Tracie Mosley, along with her two children and her sister, had gone to a Nashville grocery store. When Ms. Mosley exited the store, she saw the petitioner speaking with her sister by the car. According to Ms. Mosley, he told them that he had escaped from a mental ward and offered them twenty dollars for a ride, which they agreed to provide. The group proceeded to Ms. Mosley's house to put up her groceries, and she supplied the petitioner with some spare clothes, as he was wearing only a t-shirt and boxer shorts. *Id*.**6-7.

While there, the petitioner offered Ms. Mosley's friend, T.T., twenty-five dollars to take him to his mother's house, which she agreed to do. Ms. Mosley accompanied the pair. While en route, Ms. Mosley's daughter called her mother and told her that the petitioner was an escaped prisoner. Ms. Mosley handed the phone to T.T., and her daughter relayed the same information to her. T.T. started to panic. She pulled over the car and asked the

petitioner to exit the vehicle. When the petitioner refused, T.T. jumped from the car and ran. Inside the car, Ms. Mosley and the petitioner fought over the car keys, but, when he pulled a gun on her, Ms. Mosley also jumped from the vehicle. *Id*. at *7.

The petitioner's next actions brought him in contact with Jeffrey Conyers. Mr. Conyers had just finished mowing the grass when he saw the petitioner drive up in what was later identified as T.T.'s car. The petitioner pulled into the driveway and asked for directions to the interstate. The petitioner then got out of the car, placed a pistol to Mr. Conyers' head, and ordered him to get into his truck. Mr. Conyers was driving the vehicle with the petitioner hunkered down in the floorboard with his gun pointed at Mr. Conyers. The petitioner ordered Mr. Conyers to get them away from the area and, after some time driving, he ordered Mr. Conyers to make several stops, including an ATM where Mr. Conyers withdrew nine hundred dollars while held at gunpoint.

The petitioner ordered Mr. Conyers to keep driving, and they eventually ended up in Kentucky. The petitioner ordered Mr. Conyers to return to Tennessee and, after stopping for cigarettes and food, he forced Mr. Conyers to drive around on "little country roads." Mr. Conyers was fearful for his safety at this point. Eventually, the two men ended up at a Kroger parking lot in Milledgeville, and the petitioner informed Mr. Conyers that someone was coming to give him a ride. After taking Mr. Conyers' shirt and removing the battery from his cell phone, the petitioner told Mr. Conyers that he and the person picking him up would be following to make sure that Mr. Conyers only went straight home. The petitioner told Mr. Conyers that if he made any other stops, he would kill him. The petitioner exited the truck and walked towards the store, and Mr. Conyers drove away. While driving on the interstate, Mr. Conyers saw a policeman who had pulled over a car. He ran to the officer for assistance. *Id*. at *8.

Shortly thereafter, the petitioner approached Jeremy Nix outside the Kroger store and offered to pay him to drive him "up the road a couple of exits." Mr. Nix denied that he was ever threatened by the petitioner, and he saw no gun. While driving, Mr. Nix received a call from the Kentucky Highway Patrol, during which he learned that he had an armed and dangerous subject in the car. However, Mr. Nix lied and told officers that he had already dropped the petitioner off. He continued to drive for about ten minutes, and then he did in fact drop the petitioner off. *Id*. at **12-13.

The petitioner was taken back into custody on October 6, 2006, in Indianapolis, Indiana. Additionally, Sgt. Cummings' firearm, which the petitioner took with him from the hospital, was discovered on a railroad track in Elizabethtown, Kentucky. *Id*. at * 11.

For his actions during this afternoon/evening of crime, the petitioner was indicted for

attempted first degree murder, robbery, aggravated assault, three counts of carjacking, especially aggravated kidnapping, and escape. Prior to trial, the State nolled one of the carjacking counts. Following the jury trial, the petitioner was convicted of: reckless endangerment, robbery, misdemeanor assault, two counts of carjacking, especially aggravated kidnapping, and felony escape. Following a sentence hearing, the petitioner was sentenced, as a career offender, to an effective term of one hundred and forty-one years in the Department of Correction. Thereafter, the petitioner filed a direct appeal with this court asserting that: (1) the evidence was not sufficient to support the convictions; (2) the trial court erred by sentencing him as a career offender and ordering consecutive sentences; and (3) the trial court erred in denying the motion to dismiss trial counsel before the sentencing hearing. *Id*. at **13-14. Following review, this court affirmed.

Next, the petitioner filed a pro se petition for post-conviction relief alleging that he had been denied his right to the effective assistance of counsel. Following the appointment of counsel, an amended petition was filed. A hearing was held at which both the petitioner and trial counsel gave testimony.

The petitioner testified that he was presently serving a one hundred and forty-one year sentence in the Department of Correction. He stated that he believed that trial counsel was ineffective in his investigation of the case. He testified that he specifically asked trial counsel to obtain phone records from Sgt. Cummings. According to the petitioner, the records would have shown that Sgt. Cummings had made phone calls on the petitioner's behalf to his parole officer. The petitioner testified that he offered to pay the officer forty dollars to do this. He believed that having the records would have made his story appear more credible before the jury. He further claimed that he paid Sgt. Cummings forty dollars to walk him across the hall and that, during the process, her weapon misfired. The petitioner also testified that he requested that trial counsel employ a ballistics expert to study the gun and its discharge to discredit Sgt. Cummings' testimony and accredit his.

The petitioner also faulted trial counsel for failing to investigate and find surveillance video of his exit from the hospital. According to the petitioner, the video would have shown that he did not leave the hospital in the Quest Diagnostics van driven by Ms. Cox. The petitioner believed that trial counsel should have investigated her as well. The petitioner testified that trial counsel failed to take any of these actions.

The petitioner testified that trial counsel failed to comply with his request to interview Tracy Mosley, one of the carjacking victims. The petitioner said that if trial counsel had interviewed Ms. Mosley, it might have been possible to find her sister, Lorraine, and T.T. The petitioner believed that Lorraine would have testified that the petitioner had flagged her down at the hospital for a ride. He believed that T.T. would have said that "he did not

carjack her." According to the petitioner, trial counsel told him that they had attempted to locate Ms. Mosley but had not been successful. The petitioner noted, however, that the State had been able to find her for trial.

The petitioner also thought that trial counsel should have done more investigation on Jeffrey Conyers, the victim of the aggravated kidnapping. The petitioner testified that trial counsel should have obtained Mr. Conyers' phone records, which would have shown that he and the petitioner had previously spoken to each other. The petitioner said he knew Mr. Conyers from around the neighborhood when he was trying to start his own business. The petitioner stated that this information would rebut Mr. Conyers' statements at trial that he had never seen the petitioner before the day of the crime.

The petitioner testified that Mr. Conyers had voluntarily given him a ride. He maintained that if trial counsel had gotten video surveillance from all the places they stopped during the trip, *i.e.*, McDonald's or the ATM, it would have shown that Mr. Conyers was not under duress. The petitioner did not believe that trial counsel made any attempt to obtain video from these places.

Additionally, the petitioner testified that trial counsel was not well prepared for trial, as evidenced by the multiple continuances he requested. The petitioner testified that he was also unhappy with trial counsel's performance at the sentencing hearing. Specifically, he faulted trial counsel for not objecting to the pre-sentence report when it contained errors. The petitioner tried to get a new attorney before sentencing, but his motion was not approved. He testified that trial counsel did prepare a motion for new trial, but it was short and contained few issues. In the motion, trial counsel also inadvertently referred to the petitioner as "her."

On cross-examination, the petitioner could offer no logical explanation why various random, unassociated people chose to accuse him of multiple crimes of the same type on the same evening. He acknowledged that he had no evidence, other than his own testimony, to support the statements he made regarding trial counsel's performance. Finally, he acknowledged that he was convicted of lesser-included offenses on three of his charges.

Trial counsel testified that he was appointed to represent the petitioner at his 2008 trial. Trial counsel employed the services of an investigator early in the case because of the seriousness of the charges against the petitioner. The investigator got a copy of the indictment, made note of the listed witnesses, and met with the petitioner to discuss the case. The investigator always spoke with as many witnesses as possible, but he was not always able to locate them, or they would refuse to speak with him. Trial counsel did not actively participate in any witness interviews, and he was not aware which witnesses the investigator

-5-

spoke with in this case.

Trial counsel did vaguely recall that the petitioner had informed him that he knew Jeffrey Conyers. However, when asked by the investigator, Mr. Conyers denied any knowledge of the petitioner other than on the night of the crime. Trial counsel also did not recall subpoenaing any phone records in the case. The only surveillance video he recalled in evidence was from the hospital.

With regard to the severance issue, trial counsel testified that there was more proof of guilt with regard to some of the charges going to trial. However, while he considered filing for severance, he did not believe a motion would be granted because the events were during a continuing episode of criminal conduct. There was no real break in the events from the time the petitioner left the hospital until he released Mr. Conyers. Trial counsel felt it would have been a frivolous motion, and, therefore, filing it would do no good for the defense.

Trial counsel testified that he obtained discovery in the case and believed he had a good handle on the facts of the case. He could not recall whether there was a change in the testimony of the witnesses from the preliminary hearing to the trial.

After reviewing the submitted testimony and proof, the post-conviction court entered an order denying relief. The petitioner has timely appealed that denial.

**Analysis**

On appeal, the single issue raised by the petitioner is ineffective assistance of counsel. Specifically, he contends that trial counsel was ineffective by: (1) failing to investigate the case and to find potentially exonerating evidence; (2) failing to file a motion for severance of the charges; (3) failing to raise all issues in the motion for new trial to preserve them for appeal; and (4) failing to file mitigating factors and provide effective counsel at sentencing.

In order to obtain post-conviction relief, a petitioner must prove that his or her conviction or sentence is void or voidable because of the abridgement of a right guaranteed by the United States Constitution or the Tennessee Constitution. T.C.A. § 40-30-103 (2010); *Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004). A post-conviction petitioner must prove allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). In an appeal

of a court's decision resolving a petition for post-conviction relief, the court's findings of fact "will not be disturbed unless the evidence contained in the record preponderates against them." *Frazier v. State*, 303 S.W.3d 674, 679 (Tenn. 2010).

A criminal defendant has a right to "reasonably effective" assistance of counsel under both the Sixth Amendment to the United States Constitution and Article I, section 9, of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to effective assistance of counsel is inherent in these provisions. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger*, 279 S.W.3d at 293. To prove ineffective assistance of counsel, a petitioner must prove both deficient performance and prejudice to the defense. *Strickland*, 466 U.S. at 687-88. Failure to satisfy either prong results in the denial of relief. *Id*. at 697.

For deficient performance, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms, despite a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 688-89. "In other words, the services rendered or the advice given must have been below 'the range of competence demanded of attorneys in criminal cases.'" *Grindstaff*, 297 S.W.3d at 216 (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The petitioner must prove that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. When reviewing trial counsel's performance for deficiency, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). The reviewing court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689). However, "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Burns*, 6 S.W.3d at 462 (quoting *Strickland*, 466 U.S. at 691). "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Strickland*, 466 U.S. at 691. "Counsel must conduct appropriate investigations, both factual

and legal, to determine what matters of defense can be developed." *Baxter*, 523 S.W.2d at 932-33.

Prejudice in turn requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In *Strickland*, the Supreme Court noted that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. The court clarified that prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

A claim of ineffective assistance of counsel raises a mixed question of law and fact. *Burns*, 6 S.W.3d at 461; *Grindstaff*, 297 S.W.3d at 216. Consequently, this court reviews the trial court's factual findings de novo with a presumption of correctness, unless the evidence preponderates against the trial court's factual findings. *Grindstaff*, 297 S.W.3d at 216. But the trial court's conclusions of law on the claim are reviewed under a purely de novo standard with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

In its order denying post-conviction relief, the court stated:

At the evidentiary hearing, trial counsel testified that he met with the [petitioner] on numerous occasions and advised him of the evidence against him. Further, the petitioner was advised on the likelihood of conviction and range of punishment. Trial counsel did file a motion for new trial; however, the petitioner alleges that the motion for new trial was inadequate because it referenced another case in the motion. The Court subsequently appointed another attorney that filed another Motion for New Trial which was denied as was a notice of appeal and initial brief.

The Court finds that although the motion for new trial filed by trial counsel mentioned another case, it did not rise to the level of ineffective assistance which adversely affected his case. Petitioner has failed to demonstrate by clear and convincing evidence ineffective assistance of counsel in violation of a constitutional right to render his conviction and sentence void or voidable under the Post Conviction Relief Act. The Court does not find the petitioner's testimony to be credible. Accordingly, the Court finds that

-8-

Petitioner has failed to show that he was prejudiced by counsel's allegedly deficient conduct.

## I. Failure to Investigate

First, the petitioner contends that trial counsel was ineffective for failing to conduct an adequate investigation of his case. The petitioner, on appeal, argues that trial counsel should have obtained the video surveillance tapes of the businesses and the ATM where the petitioner and Mr. Conyers were that night in order to show that the trip was voluntary on Mr. Conyers part. He also faulted trial counsel for failing to investigate Mr. Conyers' claim that he did not know the petitioner prior to that evening and failing to obtain Mr. Conyers' phone records to rebut Mr. Conyers' testimony. Finally, the petitioner argues that trial counsel should have hired a ballistics expert to examine the gun fired at the hospital, which he asserts would indicate that a misfire occurred and contradict the testimony of Sgt. Cummings. According to the petitioner, had trial counsel investigated and produced this evidence at trial, the verdict would have been different.

The petitioner has wholly failed to carry his burden on this claim. He introduced no evidence to establish what trial counsel's further investigation would have found. Nothing in this record indicates that such video footage ever existed or what the findings of the ballistic expert would have been after testing. The petitioner offered up as evidence his word, which the trial court found to be unreliable, as to what this information would have shown. That is not sufficient to establish the claim. *See State v. Black,* 794 S.W.2d 752,757 (Tenn. Crim. App. 1999).

## II. Motion to Sever

Next, the petitioner contends that trial counsel was ineffective for failing to file a motion to sever the counts of the indictment. To support his claim, the petitioner points out that the weight of the evidence in some of the counts was much greater than in others. While acknowledging that Sgt. Cummings provided strong proof of the escape, the petitioner contends that the three carjacking charges were "substantially more suspect" because of the possible payment paid, and the jury could have been swayed less if the counts had been tried separately. He argues that "[t]he jury was able to impermissibl[y] infer that [the petitioner] was likely guilty of the other crimes he was charged with regardless of the actual strength of the changes." The petitioner goes on to assert that, had trial counsel filed a motion to sever, it would have been granted under Tennessee Rule of Criminal Procedure 14(b) .

Tennessee Rules of Criminal Procedure(8)(1)(A) sets forth the rule for mandatory joinder of offenses. The Rule states that:

Two or more offenses shall be joined in the same indictment, presentment, or information, with each offense stated in a separate count, or the offenses consolidated pursuant to Rule 13, if the offenses are:

(A) based on the same conduct or arising from the same criminal episode;
(B) within the jurisdiction of a single court; and
(C) known to the appropriate prosecuting official at the time of the return of the indictment(s), presentment)(s), or information(s).

Rule 8(b) governs permissive joinder of offenses. It provides that :

Two or more offenses may be joined in the same indictment, presentment, or information, with each offense stated in a separate count, or consolidated pursuant to Rule 13, if:

(1) the offenses constitute parts of a common scheme or plan, or
(2) they are of the same or similar character.

Tenn. R. Crim. P. 8(b)(1)-(2).

Rule 14, which controls severance, is also relevant to our analysis. It provides that

(b) Severance of Offenses--

(1) Involving Permissive Joinder of Offenses- -If two or more offenses are are joined or consolidated for trial pursuant to Rule 8(b), the defendant has the right to a severance of the offenses unless the offenses were part of a common scheme or plan and the evidence of one would be admissible in the trial of the other and:

(2) Involving Mandatory Joinder of Offenses - - If two or more offenses are joined or consolidated for trial pursuant to Rule 8(a), the court shall grant a severance of offenses in any of the following situations:

(A) Before Trial--Before trial on the motion of the state or the defendant when the court finds a severance appropriate to provide a fair determination of th defendant's guilt or innocence of each offense.

In denying relief on this issue, the post-conviction court made the following comments:

> I remember this case particularly well. I guess partly, because it was a continuing criminal episode that began at the hospital, with the overpowering of the deputy sheriff, and, I think, an encounter with a nurse, from there, in West Nashville, where these ladies were paid to give [the petitioner], a ride, when it came out that he, subsequently, carjacked them after he was given a ride over to the Donelson-Hermitage area, somewhere over there; and, then taking that car, and, then, going to a residential neighborhood where a gentleman was in his driveway, and kidnapped this particular gentleman and took him on this long ride. I remember the gentleman's testimony, Mr. Conyers, how he was extremely emotional throughout his testimony about the experience that he had in this particular case. So, this is one of those cases where many of the facts stand out.

> . . . .

> In any event, and with respect to the severance motion, had that been presented, because of the nature of the offenses, likelihood of severance was, and is, extremely remote, and it would not have been granted based on the Rule.

The petitioner makes arguments that the motion would have been granted if the offenses were subject to either mandatory or permissive joinder. The petitioner contends that if the offenses were joined only permissively as part of a common scheme or plan, severance was appropriate because evidence of one offense would not have been admissible in a separate trial for another offense.

However, we, like the post-conviction court, conclude that these offenses were subject to mandatory joinder, as the record makes clear that the petitioner's actions were part of a continuing criminal episode. From the time that the petitioner attacked the police officer in the hospital, the crimes continued in an almost continual pattern. In fact, the circumstances of this case are almost a textbook definition of a continuing criminal episode. Thus, we agree that mandatory joinder was the appropriate rule. Having so concluded, pursuant to Rule 14, severance can only be granted if the court determines that it is appropriate to provide a fair determination of a defendant's guilt or innocence of the offense. Like the lower court, we agree that severance was not appropriate in this case. As such, nothing preponderates against the post-conviction court's findings, and no relief is warranted.

## III. Motion for New Trial

The petitioner's third contention involves the motion for new trial. He asserts that the motion for new trial filed by trial counsel did not address critical issues, thus, precluding appellate review. The entire argument contained within his brief is:

> Trial counsel failed to consult with [the petitioner] in deciding what issues needed to be included in his motion for a new trial. [The petitioner] requested many times to consult with trial Counsel, but was not able to do so. The filed Motion for a New Trial included the name of another case . . . , showing that it was not particularized to the facts of the case or completed with the degree of diligence required for effective assistance of Counsel.

As evidenced by the above, the petitioner makes his claim without citation to any legal authority. It is merely a blanket assertion that trial counsel should have raised more issues and been more thorough with the motion for new trial. Failure to support argument with citation to legal authority results in waiver. *See* Tenn. R. Ct. Crim. App. 10.(b).

Moreover, the petitioner has failed to allege any specific issues in his brief which he alleges that trial counsel omitted. As they were not mentioned by the petitioner, he clearly has failed to carry his burden of showing the validity of the issues. It is not the responsibility of the post-conviction court or this court to speculate as to what issues the petitioner is referring to. Additionally, as found by the post-conviction court, we agree that the fact that there was a typographical error in the name on the motion for new trial does not rise to the level of incompetence required to establish deficient performance. There is no indication that the filed motion did not actually address the petitioner's specific issues. Finally, we note that we are aware of no requirement that trial counsel must include issues suggested by a petitioner in the motion for new trial. In fact, the raising of frivolous issues often works to a petitioner's detriment. On the record before us, we agree with the post-conviction court that the petitioner failed to establish his entitlement to relief.

## IV. Sentencing

As his final claim of ineffective assistance, the petitioner contends that trial counsel mishandled the sentencing phase of the case. Specifically, he asserts that trial counsel failed to file mitigating factors with the court and was "overall" ineffective at the sentencing hearing. His entire argument in the brief is as follows:

> Trial counsel failed to object to the sentencing report the State presented at [the petitioner's] sentencing hearing. Date of conviction was

incorrect, and even the Stat acknowledged at the time that the report was "not necessarily totally correct." This Court stated that the failure to object to the incorrect presentence report waived this argument. Trial Counsel also failed to file a Notice of Mitigating factors. Had Counsel objected to the presentence report and introduced mitigating factors, the Court would have imposed a lesser sentence.

Again, the petitioner has simply failed to establish his claim to relief on this issue. The petitioner does not dispute the actual convictions in the pre-sentence report, only the dates they were committed. Moreover, he also fails to suggest any mitigating factors which trial counsel should have put before the trial court. Finally, he offers no proof of prejudice other than a blanket assertion that the trial court would have imposed a lesser sentence. That is not enough to entitle the petitioner to post-conviction relief.

Based upon our review, the record reveals nothing which preponderates against the post-conviction court's findings. The petitioner simply makes claims of ineffective assistance of counsel without supporting proof. He puts forth no witnesses or other proof which would establish that trial counsel was deficient or that the result of the proceeding would have been different had trial counsel performed differently. Again, pursuant to *Black*, failure to present this information almost always results in a failure to establish prejudice. *Black*, 794 S.W.2d at 797. In this case, there was simply no proof offered other than the petitioner's own testimony, which incidentally the post-conviction court found not to be credible. It is that court who is responsible for making such determinations, as they are in a better position to do so. As noted multiple times, this court will not reweigh or re-evaluate such determination. *See State v. Williams*, 657 S.W.2d 405, 410-11 (Tenn. 1993). The petitioner is entitled to no relief.

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____

JOHN EVERETT WILLIAMS, JUDGE

-13-